IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD PAUL,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF AMADOR, a Political Subdivision of the State of California; AMADOR COUNTY DISTRICT ATTORNEY, TODD D. RIEBE, individually and in his professional capacity; DAVID IREY, individually and in his professional capacity; COUNTY OF TUOLUMNE, a Political Subdivision of the State of California; TUOLUMNE COUNTY DISTRICT ATTORNEY, NINA DEAN, individually and in her professional capacity; RUSSELL MOORE, RON HALL, individually and in their employment and professional capacities for the COUNTY OF AMADOR, and DOES 1-50, inclusive,<br><br>    Defendants. | CIV-S-00-0288 DFL/DAD<br><br>MEMORANDUM OF OPINION<br>AND ORDER |

In this civil rights lawsuit, plaintiff Richard Paul brings twelve claims against various counties and county officials relating to his arrest during the investigation of his friend Robert Womack ("Womack"). Defendants Todd Riebe ("Riebe") and Ron Hall ("Hall)(collectively "defendants") move for summary judgment on all of Paul's claims against them. Paul has filed no opposition to defendants' motion. For the reasons stated below, defendants' motion is GRANTED.

I.

A. The Underlying Womack Investigation

In May 1998, the Amador County Land Use Agency initiated an investigation of Womack and two other individuals for allegedly violating numerous environmental laws in conjunction with the extraction, transportation, and disposal of an underground storage tank. (Mot. at 2-3.) The matter was referred to the Amador County District Attorney's Office for prosecution. (Id.)

In June 1998, then-District Attorney Stephen Cilenti assigned defendant Hall, an investigator for Amador County, to investigate the case. (Id.) Shortly thereafter, defendant David Irey ("Irey"), a San Joaquin County deputy district attorney specializing in environmental prosecutions, was also assigned to the Womack matter. (Id.) Irey recruited defendant Russell Moore ("Moore"), a California highway patrol officer, to assist in the investigation. (Id.) The investigation of Womack proceeded throughout 1998, culminating with a search of Womack's home on October 30, 1998 and the return of a 21-count indictment against

2

Womack and others on December 1, 1998.  (Id. at 4.)

B.  The Arrest of Paul

On January 4, 1999, defendant Riebe was sworn in as the district attorney of Amador County.  (Id.)  On January 13, 1999, Moore led the execution of a second search of Womack's residence as part of the continuing investigation of Womack.  (Id.)  Hall participated in the search, but Riebe was not involved.  (Id.)  Paul was present at Womack's home during the January 13, 1999 search.  (Id.)  During the execution of the search warrant, the officers found a loaded gun under a sofa cushion.  (Id.)  Paul and several other individuals were in the vicinity of the loaded gun when it was found.  (Id.)

That afternoon, the Amador County Sheriff's Dispatch conducted a criminal history check on Paul.  (Id.)  Defendants assert that it is department policy to run a background check on individuals present at the site of a search when a loaded weapon is found improperly stored.  (Defs.' Ex. 5 ¶ 13.)  James Walshaw ("Walshaw"), an investigator for the Amador County District Attorney's Office, requested the criminal history check on Paul.  (Mot. at 5.)  The report showed that Paul had outstanding felony charges in Tuolumne County.  (Id.)

Following up on the report, Walshaw contacted the Tuolumne County District Attorney's Office and spoke to legal clerk Signle L. Cain ("Cain") to determine if Paul was a fugitive.  (Id.)  Cain confirmed that a 1992 battery charge against Paul was still

3

outstanding and could be reissued.[1] (Id. at 6.) Cain then prepared an affidavit in support of Paul's arrest, attached the investigative report of Tuolumne County Sheriff Jim Gragg to the new arrest warrant, and submitted these documents for review by Tuolumne County Deputy District Attorney Kim Seavey.[2] (Id.) After reviewing the information provided by Cain, Seavey signed the new affidavit and presented it to a Tuolumne County judge, who issued a new warrant on February 5, 1999. (Id.)

Cain left a message with Walshaw informing him that the warrant had been issued as of February 5, 1999. (Id.) Walshaw then contacted the Tuolumne County Sheriff's Department and requested that an abstract of the warrant be sent to the Amador County Sheriff's Department. (Id.) After receiving the abstract, Sergeant Milbourne of the Amador County Sheriff's Department arrested Paul on February 16, 1999 at the Amador County Government Center. (Id.)

Paul was held in the Amador County Jail for less than twenty-four hours. (Id. at 7.) He was released on February 17, 1999 after posting $5,000 in bail. (Id.) On February 23, 1999, Tuolumne County District Attorney Nina Dean asked the issuing judge to dismiss the charges against Paul in the interests of

---

[1] The battery charges related to allegations by Paul's stepdaughter that Paul battered her. (Defs.' Ex. 23.) The old warrant had never been served because of an inability to locate Paul. (Mot. at 6.)

[2] It is unclear whether Walshaw asked Tuolumne County to reissue the warrant. However, that is not a critical issue for this motion.

4

justice. (Id.)  The charges were dismissed on February 24, 1999. (Id.)

C. Alleged Defamatory Statements About Paul

On January 22, 1999, the evidence presented to the grand jury for the Womack criminal investigation became public record. (Id.)  In conjunction with that event, Riebe issued a press release urging residents to read the transcript so as to form their own opinions about the Womack incident and pointing out certain excerpts from the testimony that he believed the readers would find "interesting" or informative. (Defs.' Ex. 28.) Paul's grand jury testimony was one of the eighteen excerpts specifically mentioned in the press release. (Id.)

In addition to the press release, Riebe and Irey gave a joint radio interview on March 2, 1999, and Riebe gave a television interview on March 5, 1999. These interviews focused primarily on the Womack investigation, but Riebe also briefly discussed Paul's arrest. (Id. Exs. 29, 30.)  Riebe explained why Paul was arrested and what involvement Riebe personally had in the decision to arrest Paul. (Id.)

D. Procedural History

On February 16, 2000, Paul filed this § 1983 lawsuit against several Amador and Tuolumne County officials, as well as against the counties themselves. Paul alleges that the defendants arrested him on bogus charges and defamed him in public comments in retaliation for Paul's support of Womack and his public criticism of the Womack investigation. Paul translates this

5

basic allegation into twelve claims relating to his allegedly wrongful arrest and the allegedly libelous statements made against him.[3]  Following the dismissal of various defendants, the only remaining defendants in the suit are Riebe, Hall, and Irey.[4] Defendants Riebe and Hall now file this motion for summary judgment on all of Paul's claims.[5]  Paul, who is now representing himself pro se, has not filed an opposition to defendants' motion.[6]

## II.

"A moving party without the ultimate burden of persuasion [at trial] . . . has both the initial burden of production and

---

[3] The twelve claims are as follows: (1) violation of Fourteenth Amendment Due Process Clause and First Amendment; (2) violation of Fourth Amendment; (3) substantive due process; (4) false arrest and imprisonment; (5) abuse of process; (6) malicious prosecution; (7) libel per se (relating to the issuing of the warrant accusing Paul of battery); (8) slander per se (relating to the radio interview, television interview, and press release); (9) libel per se (relating to the publication of the affidavit in support of the warrant accusing Paul of battery); (10) fraud; (11) intentional infliction of emotional distress; and (12) negligent infliction of emotional distress.

[4] The court received notice of defendant Russell Moore's death on May 14, 2002.  Having received no motion for substitution of parties by Paul within ninety days of the notice of death, Moore is DISMISSED from the case.  Fed.R.Civ.P. 25(a)(1).

[5] It is unclear why Irey has not filed a summary judgment motion as well.

[6] On January 19, 2005, the court granted Paul a sixty-day extension to attempt to obtain counsel and file an opposition to this summary judgment motion.  After Paul failed to do either of these things, and provided the court with no explanation for his failure to do so, the court submitted defendants' summary judgment motion.

1  the ultimate burden of persuasion on a motion for summary
2  judgment." <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,</u>
3  <u>Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  To carry its burden
4  of production, "the moving party must either produce evidence
5  negating an essential element of the nonmoving party's claim or
6  defense or show that the nonmoving party does not have enough
7  evidence of an essential element to carry its ultimate burden of
8  persuasion at trial."  <u>Id.</u>  To carry its ultimate burden of
9  persuasion, "the moving party must persuade the court that there
10 is no genuine issue of material fact."  <u>Id.</u>

11 If a moving party carries its burden of production, the
12 nonmoving party must produce evidence to support its claim or
13 defense.  <u>Id.</u> at 1103.  "If the nonmoving party fails to produce
14 enough evidence to create a genuine issue of material fact, the
15 moving party wins the motion for summary judgment."  <u>Id.</u>
16 Although the mere fact that no opposition has been filed does not
17 excuse the moving party from meeting its burden on the summary
18 judgment motion, the court is not required to search the record
19 for some genuine issue of material fact.  <u>Carmen v. San Francisco</u>
20 <u>Unified Sch. Dist.</u>, 237 F.3d 1026, 1029 (9th Cir. 2001).  The
21 court may rely entirely on evidence designated by the moving
22 party.  <u>Id.</u>

23 Where a defendant moves for summary judgment based on an
24 affirmative defense, it bears the burden of establishing all of
25 the essential elements of the defense to warrant judgment in its
26 favor.  <u>See</u> <u>S. Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885,

7

888 (9th Cir. 2003). Here, defendants have moved for summary judgment based both on arguments that Paul does not have sufficient evidence to support his burden of persuasion at trial and on the basis of several affirmative defenses. For the following reasons, defendants have presented sufficient evidence to satisfy their summary judgment burden. Summary judgment is therefore appropriate on all of Paul's claims against them.

A.  No Vicarious Liability

Defendants' central argument is that, except for the allegedly defamatory statements Riebe made in his press release and media interviews, they did not participate in any of the alleged, wrongful acts underlying Paul's claims. (Mot. at 9.) Accordingly, defendants argue that all of the claims against them should be dismissed, other than the slander per se claim against Riebe, because there is no vicarious liability under § 1983. (Id.)

The evidence presented by defendants to support this argument is sufficient to satisfy their burden on summary judgment. First, the evidence shows that neither Riebe nor Hall was involved in the events leading up to Paul's arrest. Rather, Walshaw ordered the background check on Paul, contacted Tuolumne County about the outstanding warrant, and requested that an abstract of the new arrest warrant be sent to the Amador County District Attorney's Office without informing or discussing these actions with Riebe. (Defs.' Ex. 17 ¶¶ 11, 14, 15.) Riebe did not learn about any of these activities until after the warrant

8

had been re-activated and, upon learning that the arrest warrant had been re-activated, did not order Paul's arrest. (Id. Ex. 14 ¶¶ 10, 12, 15.)

Likewise, although Hall was present at the January 13, 1999 search of Womack's residence, he did not initiate the background check or participate in the events leading up to the arrest. (Id. Ex. 5 ¶¶ 6, 12, 17, 21.) Although Walshaw advised Hall that Tuolumne County would probably reissue the warrant, Hall did not participate in the arrest and only found out later that the arrest had taken place. (Id.)

Paul's deposition testimony does not contradict this evidence. Paul admits that the only reason he believes that Riebe was involved in his arrest was that he had hand-delivered letters (concerning the Womack matter) to Riebe's office in the days proceeding his arrest, and his arrest occurred at the Amador County Government Center. (Id. Ex. 16 at 139-141.) Similarly, Paul's only reason for believing that Hall was involved in his arrest was that Hall worked on the Womack investigation and had previously delivered a subpoena to Paul to appear before the Womack criminal grand jury. (Id. at 141-43.)

Second, the evidence shows that neither Riebe nor Hall was involved in the initiation, preparation, or carrying out of the affidavit or warrant that was re-issued by Tuolumne County. The battery charge had been on the books since 1992. (Id. Ex. 20 ¶¶ 3-4.) After Walshaw contacted Tuolumne County about the outstanding warrant as part of routine police procedure, Tuolumne

9

County officials reissued the warrant. (<u>Id.</u> Ex. 21 ¶¶ 3-4.) As stated above, Riebe and Hall took no part in the decision to contact Tuolumne County, in the decision made by Tuolumne County to reissue the warrant, or in the execution of the warrant.

Based on these uncontroverted facts, there is no genuine dispute that Hall and Riebe were involved in the actions leading up to Paul's arrest and the re-issuing of the 1992 arrest warrant by Tuolumne County. Accordingly, Hall is entitled to summary judgment on all of Paul's claims against him, and Riebe is entitled to summary judgment on all of Paul's claims except for the slander per se claim.

B. <u>The Slander Per Se Claim</u>

In Paul's eighth cause of action, he alleges that Riebe intentionally slandered him during the March 2nd radio interview and the March 5th television interview, as well as in the January 22nd press release. Although Riebe admits to making these statements, and therefore this claim cannot be decided on the same ground as all the others, Riebe is entitled to summary judgment on this claim for several other reasons. First, everything that Riebe stated about Paul in these interviews was true, and truth is a complete defense against civil liability for defamation. <u>See</u> <u>Goehring v. Wright</u>, 858 F.Supp. 989, 1004 (N.D.Cal. 1994).

In his press release, Riebe did not mention specifics about Paul's grand jury testimony; rather, he merely pointed to the pages of grand jury proceedings in which Paul was a witness.

10

(Defs.' Ex. 28.)  In the March 2nd radio interview, Riebe did not mention Paul at all.  (Id. Ex. 29.)  Finally, although Riebe did discuss Paul's arrest during the March 5th television interview, no false statements were made.

Specifically, Riebe made the following statements about Paul's arrest during the interview: (1) Riebe did not order Paul's arrest; (2) Riebe found out Paul had been arrested from seeing a headline in a local newspaper; (3) Riebe later learned that earlier on the day of Paul's arrest, Paul had dropped off at Riebe's office a request for certain information; (4) Paul was present at Womack's residence at the time of the January 13, 1999 search; (5) a loaded weapon was found under a cushion of the couch near where Paul was standing or sitting;[7] (6) a criminal background check was run on Paul because of the unusual and dangerous circumstances of finding a loaded weapon under a couch cushion; (7) the check led to the discovery of a dormant warrant for battery; (8) the Tuolumne County District Attorney's Office decided to reissue the warrant;[8] and (9) it is a common

---

[7] There are slight factual discrepancies concerning where Paul was when the gun was found. (Mot. at 5 n.6.)  Riebe's comment in the interview was that "Mr. Paul at one point was ordered to sit on the couch.  He's sitting on the couch.  Underneath the cushion of the couch is a loaded weapon -- a loaded firearm."  Paul claimed in his deposition that he was told to go sit on the cushion after the gun had been removed. (Defs.' Ex. 16 at 62-63.)  This discrepancy is minor and insignificant, given that Riebe's larger point in making this statement was that a background check on the people in the house was justified by the circumstances of finding a loaded weapon in such a situation.

[8] The record is unclear as to whether Walshaw requested Tuolumne County to reissue the warrant or whether Tuolumne County

11

occurrence for a law enforcement officer to learn that someone residing within the county has an outstanding warrant from another county, and in those situations, the standard procedure is to inform the other county so that the other county can determine how it wishes to proceed. (Id. Ex. 30 at 68-75.) As discussed above, all of these statements are supported by the affidavits and materials defendants submitted with their summary judgment motion.

Alternatively, summary judgment is appropriate on this claim because Paul failed to comply with the California Torts Claim Act ("CTCA") requirements. Cal. Gov't Code § 945.4 requires a plaintiff to present a claim to a public entity before commencing suit for money damages within six months of the alleged incident giving rise to the claim. If the public entity rejects the claim and supplies the claimant with proper notice under Cal. Gov't Code § 913, a plaintiff must file a complaint within six months of the date such notice is delivered or deposited in the mail. Cal. Gov't Code § 945.6(a)(1).

Paul presented his claim to Amador County in a timely fashion, filing his CTCA claim on April 26, 1999. (Defs.' Ex. 31.) Amador County rejected Paul's CTCA claim and provided Paul with the notice required by § 913 on May 11, 1999. (Id. Ex. 32.)

---

decided to issue the warrant on its own. (Defs.' Exs. 17, 20.) However, Riebe noted this discrepancy in the interview and presented both sides of the issue. (Id. Ex. 30 at 72-73.) Moreover, any discrepancy in his statement was again insignificant given that Riebe's larger point in making this statement was that he did not have anything to do with the re-issuance of the warrant.

12

Paul then filed an amended CTCA claim with Amador County on August 13, 1999. (Id. Ex. 33.) This amended claim was identical to his original claim in all respects except one: the amended claim dropped all claims against Ron Hall and Jim Walshaw and added the County of San Joaquin.[9] (Id.) Paul did not file his complaint in federal court until February 16, 2000, approximately nine months after his claim was rejected by Amador County and exactly six months following his filing of the amended CTCA claim.

    Whether Paul complied with the CTCA hinges upon whether his amended CTCA claim restarted the six-month period in which he had to file his claim in this court. California courts have held that where the later CTCA claim "amounts to no more than an attempt to amend the first claim," the amended complaint does not restart the six-month statute of limitations. Julian v. City of San Diego, 183 Cal.App.3d 169, 176, 229 Cal.Rptr. 664 (1986) (finding that plaintiff had failed to comply with CTCA's six-month limitation period and that plaintiff's amended CTCA claim did not restart the statute of limitations period because the amended claim contained allegations that were "substantially identical to those in the first claim").

    Here, Paul's amended CTCA claim is substantially identical to his first CTCA claim; it did not raise any new claims, provide any new information, or identify any new parties with ties to

---

[9] It is unclear why the County of San Joaquin was included in the amended claim.

13

Amador County.  Accordingly, Paul's amended CTCA claim did not restart the six-month statute of limitations, and the state-law claims are untimely.

### III.

For the above reasons, the court GRANTS Riebe's and Hall's motion for summary judgment.

IT IS SO ORDERED.

Dated: 6/10/2005

_____
DAVID F. LEVI
United States District Judge